IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-02450-DDD-KAS

AMERICAN CAR RENTAL ASSOCIATION, a District of Columbia corporation,

    Plaintiff,

v.

HEIDI HUMPHREYS, in her official capacity as Executive Director of the Colorado Department of Revenue,

SHOSHANA LEW, in her official capacity as the Executive Director of the Colorado Department of Transportation,

KAREN STUART, in her official capacity as the Chair of the Colorado High-Performance Transportation Enterprise,

    Defendants.

---

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF. NO. 22, FILED DEC. 20, 2024)**

---

Pursuant to Fed. R. Civ. P. 56, Defendants Heidi Humphreys, Shoshana Lew, and Karen Stuart (the "State Officials") respectfully submit this Response in Opposition to Plaintiff American Car Rental Association's ("ACRA") Motion for Summary Judgment. *See* ECF No. 22.

### INTRODUCTION

ACRA's Motion for Summary Judgment should be denied. ACRA presents a flawed reading of the Anti-Head Tax Act ("AHTA") that is not supported by the plain language of the

1

statute or the legislative history of the 2018 FAA Reauthorization Act. ACRA's interpretation would hamstring states' abilities to charge fees on entire classes of products and services, and therefore to provide critical services in the public interest. ACRA also failed to establish all elements of its claim by neglecting to establish that the Congestion Impact Fee ("Fee") is "upon any business" (it is not).

Finally, ACRA is not entitled to a permanent injunction because it has not carried its burden to demonstrate that there is no set of circumstances under which SB24-184 is valid, as is required by the facial challenge ACRA brought. Indeed, ACRA does not argue at all that the Fee is invalid as applied to off-airport vehicle rental consumers. For this reason alone, ACRA's facial challenge necessarily fails.

## RESPONSE TO ACRA'S STATEMENT OF FACTS

The core facts in this case do not appear to be in dispute. The parties agree that Colorado's General Assembly established the Fee in SB24-184. ECF No. 22 at 2; ECF No. 23 at 3. It is undisputed that, beginning on January 1, 2025, the Fee is a $3 per day user fee placed on short-term vehicle rentals for the privilege of using the state's surface transportation infrastructure. *See* ECF No. 22 at 2; ECF No. 23 at 3–4. It is also undisputed that the Fee applies to every short-term vehicle rental statewide, regardless of where the vehicle is rented. ECF No. 22 at 4; ECF No. 23 at 4. As ACRA put it, "Car rental businesses everywhere in the state are required to collect and pay the Fee, including those located at commercial service airports or operating as a permittee of such an airport." ECF No. 22 at 4. According to ACRA, Colorado has "more than a dozen commercial service airports," ECF No. 22 at 4, but "over 300 rental locations across the state," ECF No. 23-3 at 1. "[A]pproximately 50% of car and truck rentals in

2

Colorado are 'local', non-airport rentals by Coloradans." ECF No. 23-3 at 2. Therefore, the Fee "will impact Colorado citizens (and voters) to the same extent as tourists coming to the state." ECF No. 23-4 at 2–3; *see also* Testimony of Greg Scott to Senate Transportation & Energy Committee (Mar. 27, 2024), https://tinyurl.com/yvrm6b8d (2:45:42 pm–2:49:07 pm).

The main factual dispute appears to be one that ACRA is having with itself. In its motion, ACRA suggests that "at least 50 percent" of the revenue generated by the Fee "will be collected from airport car rental businesses."[1] ECF No. 22 at 4. However, before filing this lawsuit, ACRA repeatedly stated that only 43% of Fee revenue would come from airport rentals, meaning that the majority – 57% – would come from off-airport rentals. *See* ECF No. 23-5 at 2; Testimony of Greg Scott to Senate Finance Committee (Apr. 2, 2024), https://tinyurl.com/3je9ysnm (approx. 4:55:55 pm–4:58:31 pm). ACRA's new assertion that at least 50% of Fee revenue will come from airport rentals should be disregarded.[2] *Cf. Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) (discussing principle that party cannot create genuine issue of fact by contradicting previous sworn statement).

## STANDARD OF REVIEW

ACRA, as the party claiming preemption, bears the burden of showing with specificity

---

[1] ACRA bases this conclusion on a report discussing the "Car Rental" industry in the United States. *See* ECF No. 22-7 at 13. It is important to note that this report is not specific to Colorado. And, crucially, it is clearly underinclusive because it does not include truck rentals, such as U-Hauls, which are covered by the Fee and are located off-airport. *See id.* at 1 ("This industry excludes the rental or leasing of cars with drivers or trucks."); § 43-4-806(7.6)(a)(II)(D), C.R.S. ("Short-term vehicle rental" defined as motor vehicle with gross vehicle weight rating of 26,000 pounds or less).

[2] Furthermore, because ACRA is bringing a facial challenge, its claim does not depend on the relative amount of fee revenue coming from airports. So, if the Court were to credit ACRA's 50% assertion, it is not a material fact that would entitle ACRA to summary judgment.

that Congress intended to preempt state law. *Day v. SkyWest Airlines*, 45 F.4th 1181, 1184 (10th Cir. 2022). As the party with the burden of proof, to prevail on a motion for summary judgment, ACRA "must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008). Furthermore, because ACRA is bringing a facial challenge to the Fee, its burden is even greater. ACRA cannot succeed on its facial challenge unless it establishes that "no set of circumstances exists under which the law would be valid" or it shows that the law lacks a "plainly legitimate sweep." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)) (cleaned up).

## ARGUMENT

**A.  The Fee is not preempted by Subsection (v).**

In its motion, ACRA argues that it is entitled to summary judgment because the Fee is limited to short-term vehicle rentals, and a fee that is limited to a specific service is "not generally imposed" and therefore is preempted under Subsection (v). *See* ECF No. 22 at 10–11. In support of this claim, ACRA makes four principal arguments, none of which have merit.

### 1.  ACRA's plain language argument fails.

First, ACRA argues that the plain language of Subsection (v) supports its position. It points to dictionary definitions that define "generally" as "widely" and the purported absence of "words of limitation" to conclude that the Fee runs afoul of Subsection (v). *See* ECF No. 22 at 11–12. But ACRA ignores the term "fee" in Subsection (v), which provides the limiting language that ACRA claims is missing from the statute. *See* 49 U.S.C. § 40116(d)(2)(A)(v) ("A

State … may not … levy or collect a tax, fee, or charge.").

As discussed in the State Officials' Motion for Summary Judgment, a "fee" is a specific charge placed on a specific class of persons to defray the costs associated with providing specific governmental services. ECF No. 23 at 8; *see also Marcus v. Kansas Dep't of Revenue*, 170 F.3d 1305, 1311 (10th Cir. 1999). Similarly, a user fee is "a payment given in return for a government provided benefit and is tied in some fashion to the payor's use of the service." *Folio v. City of Clarksburg*, 134 F.3d 1211, 1217 (4th Cir. 1998). By definition, a "fee" does not apply universally. Rather, fees apply to a specific regulated class for a specific purpose. ACRA's interpretation requires the Court to insert "all" in front of "sales or services" in Subsection (v).

"Fee" and "generally imposed" must be read harmoniously with each other.[3] A "fee" is "generally imposed" on users of a service if it applies to all the users regardless of location. ECF No. 23 at 8–9. The Fee at issue in this case applies to every short-term vehicle rental throughout Colorado—on-airport and off-airport—without exception. It is generally imposed because it applies "widely" and to every member of the class. And it will affect Coloradans the same as out-of-state visitors. Therefore, the Fee is not preempted under Subsection (v). This interpretation is consistent with the text of Subsection (v), the AHTA's anti-discriminatory purpose, and the well-established presumption against preemption when statutory text may be susceptible to multiple plausible readings. *See* ECF No. 23 at 9–12.

ACRA's reading of Subsection (v), on the other hand, treats "fee" the same as "tax." But "fee" and its meaning cannot be ignored when interpreting Subsection (v). The presumption

---

[3] If Congress had intended to prohibit all state and local fees, it would have done so explicitly, as it did in other sections of the AHTA. *See* 49 U.S.C. § 40116(b). Congress did not do so. It only prohibited fees that are "not generally imposed."

against surplusage dictates that "tax," "fee," and "charge" mean distinct things in Subsection (v). *Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.'" (quoting *United States v. Menasche*, 348 U.S. 528, 538–39 (1955))). Statutes should be interpreted to give meaning to every term. *See, e.g.*, *id.* Interpreting Subsection (v) in the way ACRA suggests would violate this basic principle.[4]

In addition to reading "fee" out of Subsection (v), ACRA's interpretation would erase entire sections from the AHTA. According to ACRA, Subsection (v) "prohibits all but general sales taxes on businesses operating at commercial airports," except for "aviation fuel taxes" and "fees that are wholly utilized for airport or aeronautical purposes." ECF No. 22 at 1–2. But, in addition to general sales taxes, the AHTA explicitly allows states and localities to levy taxes on or related to a flight of a commercial aircraft or an activity or service on the aircraft if the aircraft takes off or lands in their jurisdiction. 49 U.S.C. § 40116(c). It also explicitly allows states to impose a variety of other taxes, "including property taxes, net income taxes, [and] franchise taxes" on airport businesses. *Id.* § 40116(e)(1). These savings clauses are integral to the AHTA's overall scheme. *See Nw. Airlines, Inc. v. Cnty. of Kent*, 510 U.S. 355, 365 (1994) (discussing how prohibitions in what is now § 40116(b) are immediately modified by savings clause now codified in § 40116(e)); *Aloha Airlines, Inc. v. Dir. of Tax'n*, 464 U.S. 7, 12 n.6 (1983) (noting that what is now § 40116(e) clarifies Congress's view that states are still free to impose taxes

---

[4] The difference between "tax" and "fee" is also important because of the jurisdictional dimensions involved. If "fee" meant the same thing as "tax," then the Court would lack subject matter jurisdiction over this suit. *See* 28 U.S.C. § 1341 (divesting district courts of jurisdiction to enjoin the assessment or collection of any state tax); *Hill v. Kemp*, 478 F.3d 1236, 1246 (10th Cir. 2007) (concluding district court lacked jurisdiction to hear constitutional claims because of Tax Injunction Act).

other than those enumerated in what is now § 40116(b)).

ACRA's interpretation of Subsection (v) would swallow up all these provisions. If Subsection (v) prohibits all but general sales taxes, then states could no longer levy taxes on flights taking off from their jurisdictions because that sort of tax is only on a particular service. If Subsection (v) prohibits all but general sales taxes, then states could no longer levy property taxes or income taxes or excise taxes on any airport-related business because those taxes are not general sales taxes. None of these savings provisions would continue to have any meaning. And, as discussed in the State Officials' Motion for Summary Judgment, ACRA's interpretation of Subsection (v) would eviscerate the states' abilities to regulate their economies and would invalidate a slew of taxes and fees across the nation. *See, e.g.*, ECF No. 23 at 16–19.

The fact that ACRA's proposed interpretation ignores Subsection (v)'s differentiation between taxes and fees and invalidates other sections of the AHTA (while wreaking havoc on states' power to impose taxes and fees) demonstrates that its proposed interpretation is incorrect. Simply put, ACRA's interpretation of Subsection (v) is not consistent with Subsection (v)'s plain language or with the AHTA's statutory scheme. Accordingly, its plain language argument should be rejected.

    **2. ACRA's reliance on the Internet Tax Freedom Act is misplaced.**

Second, ACRA argues that its reading of Subsection (v) is bolstered by the Internet Tax Freedom Act ("ITFA"). *See* ECF No. 22 at 12–13. In ITFA, Congress prohibited "discriminatory taxes" on electronic commerce. Pub L. No. 105-277, § 1101(a)(2), 112 Stat. 2681 (1998) (codified, as amended, at 47 U.S.C. § 151 note). ITFA defines a "discriminatory tax" in several ways, one of which is: a "tax" on electronic commerce that is "not generally imposed … on

7

transactions involving similar property, goods, [or] services." *Id.* at § 1105(2)(A)(i). ACRA reasons that because Congress did not use identical language in the AHTA, the "generally imposed" language in the AHTA must be broader than it is in ITFA. ECF No. 22 at 12–13. ACRA's reliance on ITFA is misplaced. ITFA addresses discriminatory taxes in a different context than the AHTA, and its language supports the State Officials' arguments.

As an initial matter, ITFA corroborates many of the points raised by the State Officials. Like the AHTA, ITFA shows that there is a qualitative difference between "tax" and "fee," as ITFA defines "tax" as a charge imposed to generate revenue for governmental purposes "and is not a fee imposed for a specific privilege, service, or benefit conferred." ITFA § 1105(8)(A)(i). Like the AHTA, ITFA demonstrates that a "charge" can be "generally imposed" (which ITFA does not define) even though it applies to a subset of transactions. Like the AHTA, ITFA confirms that policies aimed at preventing discriminatory treatment of interstate commerce do not exalt certain industries, but rather simply ensure that out-of-state transactions are treated the same as in-state transactions. *See Vill. of Rosemont v. Priceline.com Inc.*, 2011 WL 4913262, at *9 (N.D. Ill. Oct. 14, 2011) (no ITFA violation, in part, because hotel tax applied at same rate regardless of whether transaction was online or offline); *Mayor & City Council v. Priceline.com Inc.*, 2012 WL 3043062, at *8 (D. Md. July 24, 2012) (same). But unlike the AHTA, ITFA demonstrates that when Congress wants to protect a specific *industry*, like electronic commerce, it knew how to do so explicitly. Congress declined to do so with regard to vehicle rental companies in the AHTA.

But the deeper problem with ACRA's argument is that there is no canon of statutory interpretation that requires Congress to use identical language in different statutes when

8

exercising its Commerce Clause power in different contexts. The differences between the AHTA and ITFA can be explained by the unique context in which the AHTA developed. Congress created the AHTA in 1973 to prevent discrimination against interstate commerce at airports, and each modification Congress has made over time built upon the previous ones as this policy matured in the airport context. *See* ECF No. 23 at 9–10. Airports (with their variety of businesses and stakeholders organized around transporting people and goods) are not the same as electronic commerce (which ITFA section 1105(3) defines as "any transaction conducted over the Internet"), so it is not surprising that the AHTA approaches its task differently than ITFA. The best way to understand Subsection (v) is to place it within the context of the AHTA.[5] As discussed in the State Officials' Motion for Summary Judgment and in this opposition, the State Officials' interpretation of Subsection (v) is consistent with the language and purpose of the AHTA and preserves the states' traditional police power. ACRA's reliance on ITFA should be disregarded.

        **3.    ACRA's Subsection (iv) argument is incorrect.**

Third, ACRA argues that the State Officials' proposed interpretation of Subsection (v) would render 49 U.S.C. § 40116(d)(2)(A)(iv) ("Subsection (iv)") superfluous. *See* ECF No. 22 at 13–14. But that is not correct.

---

[5] ACRA would instead like this Court to understand the AHTA by comparison to ITFA's language. But utilizing a non-definition from an unrelated statute to define "generally imposed" here is not persuasive. The definition of a different term in a wholly unrelated statute is simply not relevant to defining terms in the AHTA. *See Mohamad v. Palestinian Auth.*, 566 U.S. 449, 454–55 (2012) (favoring "how we use the word in everyday parlance" to understand undefined term and, in comparing the meaning of such term to its use in other statutes and finding it is generally used consistently, noting that "Congress remains free, as always, to give the word a broader or different meaning").

As discussed in the State Officials' Motion for Summary Judgment, Subsection (iv) still allowed states to specifically target airports by, for example, creating special taxing zones centered on airports, as exemplified by *Avis Budget Grp. v. Newark*, 48 A.3d 1113 (N.J. App. Div. 2012). *See* ECF No. 23 at 9–10. In ACRA's words, "Subdivision (d)(2)(A)(iv) left states free to impose taxes and fees that *disproportionately* targeted airports, so long as the tax or fee *nominally* applied both on and off the airport." ECF No. 22 at 13 (emphasis added). Subsection (v) addressed this by requiring that states actually apply taxes, fees, and charges broadly throughout their jurisdiction.

Subsection (v), therefore, ensures that airport businesses are treated the same as non-airport businesses when it comes to state taxes and fees. Thus, states cannot impose a tax[6] on a business simply because it is at an airport (i.e., because that would be an exclusive tax under Subsection (iv)). States cannot impose a tax on businesses in a gerrymandered area as a sly way to tax businesses at an airport (i.e., because that would not be generally imposed on sales and services under Subsection (v)). But states can impose a statewide tax on a product (e.g., liquor) even though that product happens to be also sold at airports (e.g., airport bars) because that product tax applies everywhere in the state (e.g., neighborhood bars) and therefore qualifies as a generally imposed tax under Subsection (v). Both Subsection (iv) and Subsection (v) have meaning under the State Officials' interpretation.

On the other hand, ACRA's argument that Subsection (v) prohibits all but general sales taxes would mean that Subsection (iv) and several other sections of the AHTA no longer serve any purpose. As discussed above, ACRA's interpretation would, among other things, delete

---

[6] These examples refer to "tax" for concision, but apply to taxes, fees, or charges.

words from Subsection (v) and erase the savings clauses from the AHTA. Congress did not address Subsection (iv)'s shortcomings by taking a sledgehammer to the AHTA and the states' ability to levy taxes and fees irrespective of how broadly and equally those taxes and fees are applied. ACRA's interpretation is unreasonable and should be disregarded.

    **4. ACRA's legislative history from 2011 should be ignored.**

  Finally, ACRA argues that legislative history and case law support its interpretation of Subsection (v). *See* ECF No. 22 at 14–17. In particular, ACRA relies on floor statements made by certain members of Congress in 2011 on an amendment to the FAA Reauthorization and Reform Act of 2011 that was never voted on by Congress. *See id.*; 157 Cong. Rec. H2198-H2212, H2199 (Mar. 31, 2011) (Statement of Representative Graves: "And while I am going to withdraw the amendment, I think it's very important to talk about this . . . With that, Mr. Chairman, I withdraw my amendment."). ACRA implies that these floor statements from 2011 should somehow inform the interpretation of Subsection (v), which was passed *seven years later* by a different Congress as part of the 2018 FAA Reauthorization Act. ACRA's legislative history arguments should be rejected.

  Courts have frequently taken a jaundiced view of floor statements made in conjunction with legislation because they are unreliable and subject to manipulation. Legislative history as a general matter can be problematic, in part, because it "may give unrepresentative committee members—or, worse yet, unelected staffers and lobbyists—both the power and the incentive to attempt strategic manipulations of legislative history to secure results they were unable to achieve through the statutory text." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005). This is especially the case when it comes to floor statements, which have been

considered "a wholly unreliable form of legislative history for over a hundred years." *United States v. Bingert*, 605 F. Supp. 3d 111, 128 (D.D.C. 2022); *see also Asociacion de Exportadores e Industriales de Aceitunas de Mesa v. United States*, 102 F.4th 1252, 1259 (Fed. Cir. 2024) ("[F]loor statements by individual legislators rank among the least illuminating forms of legislative history."). Floor statements are considered unreliable because "the views and motives of individual members are not a safe guide, and hence may not be resorted to, in ascertaining the meaning and purpose" of Congress as a whole. *Duplex Printing Press Co. v. Deering*, 254 U.S. 443, 474 (1921); *see also Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 390 (2000) (Scalia, J., concurring) ("Neither the statements of individual Members of Congress (ordinarily addressed to a virtually empty floor) ... nor the nonenactment of other proposed legislation, is a reliable indication of what a majority of both Houses of Congress intended when they voted for the statute before us.").

The floor statements that ACRA has dusted off from 2011 are a perfect example of dubious legislative history that should be disregarded by the Court. Representative Graves's opinion in 2011 of what Congress intended in 1994 when it passed Subsection (iv), *see* ECF No. 22 at 14–15, is completely irrelevant, *see Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011) ("Post-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation."). And Representative Graves's and Representative Cohen's musings in 2011 about an amendment that they were immediately withdrawing from consideration, *see* ECF No. 22 at 14–15, tell us nothing about what a future Congress intended when it passed Subsection (v). These 2011 statements were not uttered to the 2018 Congress, so they provide no insight into what the majority of both Houses of Congress intended in 2018 when they voted for the 2018

FAA Reauthorization Act. *See, e.g.*, *State of Colo. v. U.S. Dep't of Interior*, 880 F.2d 481, 490 (D.C. Cir. 1989) (disregarding "floor statements that are unconnected with the passage of relevant legislation").

At most, these floor statements make it clear that Representative Graves and Representative Cohen support the car rental industry. But none of these statements support ACRA's claim that in 2018, Congress, as a whole, intended to "prohibit all but general sales taxes on businesses operating at commercial airports."[7] ECF No. 22 at 1–2. ACRA's legislative history should be disregarded.[8]

### 5. ACRA has not shown that the Fee is "upon any business."

In addition to its four principal arguments, which fail to show that the Fee is "not generally imposed," ACRA has also failed to show that the Fee is "upon any business." In its motion, ACRA simply stated that this element was "indisputably met." ECF No. 22 at 10. But, as explained in the State Officials' Motion for Summary Judgment, the legal incidence of the Fee is on consumers of rental vehicles across the State, not on vehicle rental businesses. ECF No. 23 at 12–14. ACRA does not pay the Fee out of its pocket; its members simply collect it from

---

[7] The only piece of legislative history from 2018 that ACRA cites to is a floor statement by Representative Graves in which he said he worked on a policy to "prevent the local and State governments from targeting certain industries for discriminatory taxes, like the rental car industry." 164 Cong. Rec. H3590, H3597. As with his 2011 statements, Representative Graves's vague reference to "discriminatory taxes" and the "car rental industry" does not support ACRA's claim that Congress intended to broadly eviscerate the revenue-raising and regulatory power of every state in Subsection (v).

[8] ACRA also cites to a footnote in the *Avis* case where that court referenced these floor statements. ECF No. 22 at 16–17; *Avis*, 48 A.3d at 1121 n.5. Since the withdrawn 2011 amendment was not at issue in *Avis*, that court's reference to it is dicta that should be disregarded.

customers, who are the road users subject to the Fee.[9] *See* ECF No. 1, ¶ 35; § 43-4-806(7.6), C.R.S. Charges on customers are not imposed "upon any business" under the AHTA. *See Susquehanna Area Reg'l Airport Auth. v. Middletown Area School Dist.*, 918 A.2d 813, 817 (Commonwealth Ct. Penn. 2007); *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 76 Cal. Rptr. 2d 297, 300 (Cal. Ct. App. 1998). Accordingly, the Fee is not imposed "upon any business" and not preempted under Subsection (v).[10] Because ACRA has failed to prove this necessary element of its claim, it is not entitled to summary judgment or a permanent injunction.

*   *   *

In short, ACRA's interpretation of the AHTA's language is flawed, its reliance on ITFA is misplaced, and its use of dubious legislative floor statements should be rejected. Furthermore, ACRA has neglected to prove the Fee is "upon any business." ACRA has failed to show that the Fee is preempted by Subsection (v), so ACRA's Motion for Summary Judgment should be denied. *See, e.g.*, *Pelt*, 539 F.3d at 1280 (movant with burden of proof must prove all elements); *United States v. Uintah Valley Shoshone Tribe*, 946 F.3d 1216, 1222 (10th Cir. 2020) (to obtain permanent injunctive relief, movant must show "actual success on the merits").

---

[9] By contrast, a fee on the gross receipts of a car rental business's airport location would be an example of a fee imposed upon a business located at a commercial service airport. See, for example, the fee in *Alamo Rent-A-Car, Inc. v. City of Palm Springs*, 955 F.2d 30 (9th Cir. 1991), where a city imposed a 7% fee on gross receipts for use of airport access roads.

[10] *Susquehanna* and *Burbank* were decided after 1994, when Congress added Subsection (iv) to the AHTA but before 2018, when Congress added Subsection (v). Knowing that courts had interpreted the "upon any business" language in this manner, Congress chose to use the same "upon any business" language in Subsection (v). *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) ("We assume that Congress is aware of existing law when it passes legislation."). Therefore, the logic in *Susquehanna* and *Burbank* applies here: fees paid by customers and merely collected by businesses are not "upon any business."

**B.     ACRA cannot prevail on its facial challenge because it cannot show that there is "no set of circumstances" under which the Fee would be valid.**

ACRA has styled its complaint as a facial challenge to SB24-184 and it must see that challenge through. ACRA's Complaint claimed, "The Fee facially violates the Anti-Head Tax Act," ECF No. 1, ¶ 2, and that declaratory relief is warranted, as "Plaintiff attacks the statutory scheme of the Fee *in its entirety as facially invalid*," *Id.*, ¶ 32(c). In its motion for summary judgment, ACRA appears to try to escape the facial challenge it set in motion by suggesting that its claim is an as-applied challenge to the Fee "insofar as it applies to vehicle rentals from airport locations." ECF No. 22 at 1. ACRA further concludes that "this Court should issue a judgment declaring that the Fee is preempted by section 40116(d)(2)(A)(v) and *cannot be applied to airport car rentals*," yet requests a declaratory judgment and permanent injunction barring enforcement of the Fee *everywhere*. ECF No. 22 at 17 (emphasis added). ACRA must prove its facial challenge. *See Moody*, 603 U.S. at 724–26 (remanding the matter because the original challenges were facial, but the lower courts treated like as-applied challenges).

When a party chooses to litigate a case as a facial challenge, "that decision comes at a cost." *Moody*, 603 U.S. at 723. Because facial challenges "often rest on speculation about the law's coverage and its future enforcement" and "threaten to short circuit the democratic process by preventing duly enacted laws from being implemented in constitutional ways," the Supreme Court has made such challenges "hard to win." *Id.* (cleaned up). "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *Salerno*, 481 U.S. at 745. The fact that an act "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *Id.* "To

15

prevail, [defendants] need only demonstrate that [the challenged act] is constitutional in some of its applications." *United States v. Rahimi*, 602 U.S. 680, 693 (2024).

The State Officials need only demonstrate that the Fee "is constitutional in some of its applications" to prevail. *Id.* As the State Officials have shown, all applications of SB24-184 are constitutional. But even if that were not the case, ACRA does not challenge the constitutionality of the Fee on off-airport customers, conceding that the Fee is "constitutional in some of its applications": at off-airport vehicle rental locations. *Id.* As ACRA cannot show that there is "no set of circumstances" under which the Fee is valid, its facial challenge necessarily fails.

## CONCLUSION

For the reasons discussed above and in the State Officials' Motion for Summary Judgment (ECF No. 23), ACRA's Motion for Summary Judgment should be denied.

DATED at Denver, Colorado this 17th day of January, 2025.

        PHILIP J. WEISER
        Attorney General

        *s/ Shelby A Krantz*
        PAWAN NELSON, 49462*
        Senior Assistant Attorney General
        SHELBY A. KRANTZ, 53866*
        Assistant Attorney General
        Ralph L. Carr Colorado Judicial Center
        1300 Broadway, 8th Floor
        720-508-6578 (Nelson)
        720-508-6437 (Krantz)
        Pawan.Nelson@coag.gov
        Shelby.Krantz@coag.gov

        *Attorneys for Defendants*
        **Counsel of Record*

## STATEMENT OF COMPLIANCE

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(2).

*s/ Shelby A Krantz*