IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-02450-DDD-KAS

AMERICAN CAR RENTAL ASSOCIATION, a District
of Columbia corporation,

    Plaintiff,

v.

HEIDI HUMPHREYS, in her official capacity as
Executive Director of the Colorado Department of
Revenue,

SHOSHANA LEW, in her official capacity as the
Executive Director of the Colorado Department of
Transportation,

KAREN STUART, in her official capacity as the Chair of
the Colorado High-Performance Transportation
Enterprise,

    Defendants.

---

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT (DKT. #22, FILED DEC. 20, 2024)**

---

*ORAL ARGUMENT REQUESTED*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

I.  THE STATUTORY LANGUAGE .............................................................................. 1

II. DEFENDANTS' OTHER ARGUMENTS .................................................................. 5

    (a).  Subdivision (iv) ................................................................................................ 5

    (b).  Legislative History ........................................................................................... 6

    (c).  Levied or Collected Upon Any Business ........................................................ 7

III. DEFENDANTS' NEW ARGUMENT — FACIAL/AS APPLIED ................................. 7

IV. CONCLUSION .......................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Citizens United v. FEC*,
   558 U.S. 310 (2010) .................................................................................................9

*City of Tuscaloosa v. Tuscaloosa Vending Co., Inc.*,
   545 So. 2d 13 (Ala. 1989) .........................................................................................3

*Doe #6 v. Miami-Dade Cnty.*,
   974 F.3d 1333 (11th Cir. 2020) ................................................................................9

*Humphrey's Ex'r v. U.S.*,
   295 U.S. 602 (1935) .................................................................................................7

*John Doe No. 1 v. Reed*,
   561 U.S. 186 (2010) .................................................................................................8

*N. Adjusters v. Dep't of Revenue*,
   627 P.2d 205 (Alaska 1981) .....................................................................................3

*N.L.R.B. v. SW Gen., Inc.*,
   580 U.S. 288 (2017) .................................................................................................6

*Schwegmann Bros. v. Calvert Distillers Corp.*,
   341 U.S. 384 (1951) .................................................................................................6

*Township of Tinicum v. U.S. Department of Transportation*,
   582 F.3d 482 (3d Cir. 2009) .....................................................................................4

*U.S. v. Automobile Workers*,
   352 U.S. 567 (1957) .................................................................................................7

*U.S. v. City & Cnty. of San Francisco*,
   310 U.S. 16 (1940) ...................................................................................................7

*U.S. v. Salerno*,
   481 U.S. 739 (1987) ............................................................................................. 8-9

*U.S. v. Supreme Court of New Mexico*,
   839 F.3d 888 (10th Cir. 2016) ..............................................................................8, 9

**Statutes**

49 U.S.C. § 40116(d)(2)(A)(v) ...........................................................................................1

Alaska Stat. § 43.70.030 ....................................................................................................3

Del. Code Ann. tit. 30, § 2301(d)(1)..................................................................................3

Wash. Rev. Code § 35.21.710............................................................................................3

**Other Authorities**

A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts (2012) ............................2

Black's Law Dictionary (6th ed. 1990)..............................................................................2

Order, Tinicum Township Privilege Fee Proceeding,
   No. OST-2007-29341, 2008 WL 5550458 (D.O.T. Mar. 19, 2008)..........................................4

Tax Foundation, Reforming Rental Car Excise Taxes (2019), available at
   www.taxfoundation.org/research/all/federal/reforming-rental-car-excise-taxes/ ......................7

Case No. 1:24-cv-02450-DDD-KAS  Document 26  filed 01/31/25  USDC Colorado

Defendants' opposition (ECF No. 25, Jan. 17, 2025) to ACRA's Motion for Summary Judgment (ECF No. 22, Dec. 20, 2024) confirms one thing—this is an easy case in which the statutory language is dispositive.

I.   THE STATUTORY LANGUAGE

ACRA's argument is straightforward: Subdivision (v) prohibits a state from levying or collecting a "tax, fee, or charge . . . upon any business located at a commercial service airport," unless the tax, fee or charge is one that is "generally imposed on sales or services by that state." 49 U.S.C. § 40116(d)(2)(A)(v).  To be "generally imposed on sales or services," a tax, fee, or charge has to be imposed on sales or services "widely, extensively" "in most situations," or "as a rule."[1]  Because the Fee at issue here is imposed on only *one particular* service, i.e., vehicle rentals, it is by definition not "*generally* imposed on sales or services."  The Fee is therefore prohibited under Subdivision (v) insofar as it applies to airport rentals.

To avoid this result, Defendants' opposition engages in a transparent attempt to rewrite the statute.  The statute does not ask whether the tax or fee "*is 'generally imposed' on users of a service*"—the standard Defendants set out at page 5.  Nor does it ask whether the tax or fee "*applies . . . to every member of the class*"—the standard Defendants set out three lines later.  (ECF No. 25 at 5.)  One does not have to guess or make up language about what the tax or fee must be "generally imposed" on.  The statute says it explicitly.  It must be "*generally imposed on sales or services*."

---

[1]   *See* ECF No. 22 at 11-12 (definitions of "generally" from Oxford English Dictionary, Cambridge Dictionary, and American Heritage Dictionary).

1

Defendants' opposition accuses ACRA of reading these words too broadly, of seeking to "insert [the word] 'all' in front of 'sales or services.'" (ECF No. 25 at 5.) But ACRA's construction does nothing of the sort. The terms "sales" and "services" are general words with clear meanings. A "sale" is a "transfer of property for a fixed price."[2] A "service" is the "performance of labor for benefit of another."[3] The statutory text contains clear direction as to *which* "sales or services" must be subject to a tax, fee, or charge for it to pass muster. It is not "*all*" sales and services (as Defendants incorrectly caricature ACRA's argument). Instead, the tax, fee, or charge must be "*generally* imposed on sales or services"—meaning it must be imposed on them "widely, extensively," "in most situations," or "as a rule."[4] Defendants are not free to ignore this language, in favor of adding words of limitation. "Without some limitation to the contrary, general words . . . are to be accorded their full and fair scope. They are not to be arbitrarily limited." A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 101 (2012).

Defendants alternatively argue that ACRA's reading is wrong because it "treats 'fee' the same as 'tax'" and thereby "read[s] 'fee' out of Subsection (v)," in violation of the rule against surplusage. (ECF No. 25 at 5-6.) But with all due respect, the argument is incoherent. The prohibition in Subdivision (v) applies equally to a "tax, fee, or, charge." That coverage is consistent with the statute's purpose, which is to bar any type of exaction falling within the statutory prohibition, regardless of the label given to it. ACRA's claim not only acknowledges this, it is dependent on it. If the statute barred only "taxes," ACRA would not have a claim because

---

[2]   Black's Law Dictionary (6th ed. 1990).
[3]   *Id.*
[4]   *See*, *supra*, note 1.

2

Colorado's Fee is denominated a "fee," not a "tax." Far from treating "taxes" and "fees" "the same," ACRA's claim fully acknowledges that they are different—and that the statute prohibits both.

"Generally imposed on sales or services" serves as a savings clause—saving a tax, fee or charge from the federal preemption. What Defendants are really claiming is that under ACRA's reading, only taxes can come within the savings clause, because as a practical matter, only a tax can be "generally imposed on sales or services."[5] Putting aside the incorrect assumption embedded in that claim—that a fee can never be "generally imposed on sales or services"—the appropriate response is *so what*? The savings clause is a savings clause, and nothing more. Even if it were true that "taxes" were the only type of exaction likely to qualify, no part of the statute would be rendered invalid or surplusage. The savings clause would still have significant meaning and application. Nothing in the statute *requires* that there be fees that are "generally imposed on sales or services."

Furthermore, Defendants' premise is wrong. A number of jurisdictions impose broad-based "fees" on businesses' sales or services. Some states and localities, for example, impose general "business license fees" on all or nearly all businesses, with the "fee" determined as a percentage of the business' total sales receipts.[6] Although these fees share some features of taxes, they are denominated as "fees."

---

[5]   *Se*e ECF No. 25 at 5 ("By definition, a 'fee' does not apply universally.").

[6]   *See*, *e.g.*, *City of Tuscaloosa v. Tuscaloosa Vending Co., Inc.*, 545 So. 2d 13, 14 (Ala. 1989) ("business license fee based upon the gross receipts of a business"); Del. Code Ann. tit. 30, § 2301(d)(1); Wash. Rev. Code § 35.21.710; *N. Adjusters v. Dep't of Revenue*, 627 P.2d 205, 206 (Alaska 1981) (former Alaska Stat. § 43.70.030)).

3

Finally, Defendants make one other argument against ACRA's reading. They say that ACRA's "interpretation would erase entire sections from the AHTA." (ECF No. 25 at 6.) They point specifically to subsection (c), which they characterize as a "savings clause" allowing states to "levy taxes on flights taking off from their jurisdictions." (*Id*. at 7.) They argue that if ACRA's reading were accepted, states would no longer be able to levy such taxes.

The argument, however, rests on a fundamental misreading of subsection (c), which the Third Circuit debunked more than a decade ago in *Township of Tinicum v. U.S. Department of Transportation*, 582 F.3d 482 (3d Cir. 2009). Like the Pennsylvania township in that case, Defendants misread subsection (c) as an affirmative authorization allowing states to "levy taxes on flights taking off from their jurisdictions." (ECF No. 25 at 7.) That is wrong. As the Third Circuit explained, state and local taxes on airport landings and takeoffs have been subject to a "categorical ban" since 1973 when Congress enacted the Airport Development Acceleration Act. *Twn. of Tinicum,* 582 F.3d at 487. "[S]ubsection (c) is not a savings clause for flight-related taxes." *Id*. at 490. Subsection (c) instead establishes an *additional* requirement—a "ground nexus" requirement—that must be satisfied before a state or locality imposes taxes otherwise permitted under section 40116, such as property and income taxes. *Id.* at 488-89.[7] There is therefore no basis for Defendants' suggestion that ACRA's interpretation conflicts with subsection (c). Defendants have simply misinterpreted that provision.

The same is true of subsection (e)—the other provision that Defendants argue would be "erased" from the statute if ACRA's reading of subsection (d) were correct. What Defendants fail

---

[7] The requirement was enacted in 1990 to prohibit states from imposing property tax on "aircraft overflights." 2008 WL 5550458 (D.O.T.), at *21-22.

4

to acknowledge is that subsection (e) is expressly subservient to subsection (d). Subsection (e) authorizes state and local taxes, "[e]xcept as provided in subsection (d) of this section." Thus, it is impossible for subsection (d) to "erase" subsection (e). Subsection (e) is already limited by its express terms to taxes that are not otherwise prohibited by subsection (d).

Moreover, Defendants' characterization of the impact on taxes listed in subsection (e) is vastly overstated. ACRA's interpretation would not mean that "states could no longer levy property taxes or income taxes or excise taxes on any airport-related business." (ECF No. 25 at 7.) For one thing, Subdivision (v) applies only to new taxes enacted after October 5, 2018, and the vast majority of property, income, and excise taxes were enacted decades ago. But even in the case of newly enacted taxes, if a tax is generally imposed on sales and services, it would be valid. The form of the imposition does not matter.

## II.    DEFENDANTS' OTHER ARGUMENTS

Defendants make three other arguments responsive to ACRA's Motion. Because ACRA has covered these points elsewhere, these arguments can be addressed briefly.

(a). <u>Subdivision (iv)</u>. First, Defendants contest ACRA's claim that Defendants' reading of Subdivision (v) is duplicative of Subdivision (iv), which already prohibits taxes and fees that apply on-airport but not off-airport. Defendants say that Subdivision (v) is broader in scope because it requires off-airport taxes and fees to be imposed uniformly throughout a jurisdiction. This, they say, was necessary to prevent states from imposing taxes "in a gerrymandered area" by "creating special taxing zones centered on airports." (ECF No. 25 at 10.)

But there is no evidence to support this theory in the statute's text or legislative history, and Defendants' reading would not solve the problem in any event. A state or locality intent on

5

"gerrymandering" by "creating special taxing zones centered on airports" could continue to do so under Defendants' view of the statute simply by making the "special taxing zone" its own "political subdivision" or "authority." So long as the fee was uniformly imposed throughout the political subdivision or authority's gerrymandered boundaries, it would be permissible under Defendants' theory. Defendants' theory requires one to believe that Congress acted for no reason at all.

But, even more fundamentally, Defendants' explanation has traded one superfluity for another. Under Defendants' theory, both Subdivision (iv) and (v) impose geographic-based limitations. Subdivision (iv) requires a tax or fee be imposed on at least one location off the airport, whereas Subdivision (v) requires the tax or fee be imposed on all locations off the airport. But if that were so, Subdivision (v)'s coverage would always be the broader of the two, leaving nothing for Subdivision (iv) to accomplish and rendering it superfluous.

(b). <u>Legislative History</u>. Defendants cite nothing in the legislative history supporting their reading of Subdivision (v). But they criticize the legislative history cited by ACRA, noting various cases critical of the use of floor statements such as those cited by ACRA. But one need not wade into the debates over the permissible uses of legislative history to decide this case. The legislative history is confirmatory only; it is relevant only because it confirms ACRA's plain reading is correct.

The floor statements cited by ACRA, moreover, bear none of the hallmarks that prior cases have pointed to as evidence of unreliability. The statements are wholly uncontradicted,[8] are made by legislative sponsors rather than rank-and-file legislators,[9] and there are no more authoritative

---

[8]    *N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 307 (2017).

[9]    *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 394 (1951).

6

forms of legislative history such as committee reports.[10]  ACRA cited the floor statements for the traditional reason such floor statements have been cited—to show that its reading of the text is consistent with the statute's "general purposes and the evils which it sought to remedy." *Humphrey's Ex'r v. U.S.*, 295 U.S. 602, 625 (1935); *U.S. v. City & Cnty. of San Francisco*, 310 U.S. 16, 22 (1940) ("Reference to congressional debates may be made to establish a common agreement upon the general purpose of an Act.").  The "evil" described in the floor statements is the same evil that has been associated with rental car taxes for years, *i.e.*, they "export a portion of the tax base onto nonresidents who bear a disproportionate burden of the tax."[11]  While ACRA acknowledges that floor statements may be an imperfect vehicle for determining legislative purpose, they are vastly preferable to the approach adopted by Defendants—which is simply to assert, *ipse dixit*, what Congress' purpose must have been without citation to anything in the legislative record at all.  (*E.g.,* ECF No. 25 at 10.)

(c).  <u>Levied or Collected Upon Any Business</u>.  Finally, Defendants assert the Fee is not levied or collected "upon" any business, because its "legal incidence" is on consumers.  Defendants made this same argument in support of their Cross-Motion, to which ACRA previously responded.  Because there is nothing new to add, ACRA respectfully refers the Court to that discussion for its response.  (ECF No. 24 at 10-15.)

### III.  DEFENDANTS' NEW ARGUMENT — FACIAL/AS APPLIED

Defendants close their opposition with a new argument, arguing that because ACRA "styled its complaint as a facial challenge," it cannot prevail because it claims that the Fee is invalid

---

[10]   *U.S. v. Automobile Workers*, 352 U.S. 567, 585 (1957).

[11]   *See* Tax Foundation, Reforming Rental Car Excise Taxes at 7 (2019), available at www.taxfoundation.org/research/all/federal/reforming-rental-car-excise-taxes/.

7

only insofar as it applies to airport rentals.  (ECF No. 25 at 15.)   In support, they cite *U.S. v. Salerno*, 481 U.S. 739 (1987), which requires the plaintiff in a facial challenge to show "no set of circumstances exists under which the [statute] would be valid."  (*Id.*)

Defendants are wrong for the reasons explained by the Tenth Circuit in *U.S. v. Supreme Court of New Mexico*, 839 F.3d 888 (10th Cir. 2016), which explores this issue at length, applying both *Salerno* and *John Doe No. 1 v. Reed*, 561 U.S. 186 (2010).  The case involved a challenge to a New Mexico ethics rule governing a prosecutor's duties when subpoenaing a lawyer to testify.  The United States brought suit claiming that the rule was facially invalid but only as applied to federal prosecutors.  839 F.3d at 908-09.  Like Defendants here, the defendants in *New Mexico* argued that the plaintiff's framing of its challenge as "facial" was inconsistent with the "as applied" relief sought—and that the facial challenge necessarily failed under *Salerno* because it failed to claim the rule was invalid in all applications, i.e., as applied to all prosecutors, not just federal prosecutors.  *See id*. at 910-12, 916.

The Tenth Circuit disagreed, explaining that "facial and as-applied [challenges] are not mutually exclusive or antipodal constructs," and many cases have "characteristics of both."  *Id.* at 914 (citing *Reed*, 561 U.S. at 194).  Thus, the United States' challenge was "'as applied' in the sense that it does not seek to strike the [New Mexico rule] in all its applications," but also "'facial' in that it is not limited to [a] particular case [i.e., a particular federal prosecutor's issuance of a specific attorney subpoena]."  *Id*. (quoting *Reed*, 561 U.S. at 194).  The court explained that in that situation of "duality," the claim was facial but the *Salerno* standard must be applied commensurately.  The plaintiff must prove that the statute is invalid "only to the universe of

8

applications contemplated by plaintiffs' claim, not to all conceivable applications contemplated by the challenged [statute]." *Id*. at 914.

The same is true here. ACRA's claim is facial because it reaches beyond any company's "particular circumstances" to all airport rental transactions. But because "the universe of applications contemplated by plaintiffs' claim" is that the Fee is preempted *at airports*, Plaintiff must show only that the Fee cannot be applied *at airports*—not everywhere—to satisfy the *Salerno* standard. *Id*.

Although *New Mexico* is dispositive of Defendants' argument, ACRA notes that even if it was not, Defendants would still be wrong. Defendants claim that ACRA is bound by the "facial" characterization in its complaint, and "it must see that challenge through." (ECF No. 25 at 15.) But it cites nothing to support that statement, and it is contradicted by the caselaw. The distinction between facial and as-applied challenges "goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Citizens United v. FEC*, 558 U.S. 310, 331 (2010). Accordingly, a plaintiff is permitted to change its "focus from facial to as-applied relief . . . at the summary judgment stage," even without a motion to amend the complaint under Rule 15. *Doe #6 v. Miami-Dade Cnty.*, 974 F.3d 1333, 1338 (11th Cir. 2020). "[T]he labels the parties attach to claims are not determinative." *New Mexico*, 839 F.3d at 914.

## IV. CONCLUSION

The Court should grant ACRA's motion, declare the Fee invalid as applied to airport rentals and enjoin its application to airport rentals.

\*   \*   \*

9

DATED this 31st day of January 2025.

<u>s/ Daniel H. Schlueter</u>
Jeffrey A. Friedman
Daniel H. Schlueter
Eversheds Sutherland (US) LLP
700 Sixth Street, NW, Suite 700
Washington, D.C. 20001
Telephone: 202.383.0100
FAX: 202.637.3593
Email: jefffriedman@eversheds-sutherland.com
danschlueter@eversheds-sutherland.com

Attorneys for Plaintiff
American Car Rental Association

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

10