IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Civil Action No. 1:24-cv-02450-DDD-KAS

AMERICAN CAR RENTAL ASSOCIATION, a District of Columbia corporation,

    Plaintiff,

v.

HEIDI HUMPHREYS, in her official capacity as Executive Director of the Colorado Department of Revenue,
SHOSHANA LEW, in her official capacity as Executive Director of the Colorado Department of Transportation, and
KAREN STUART, in her official capacity as the Chair of the Colorado High-Performance Transportation Enterprise,

    Defendants.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In this case, Plaintiff American Car Rental Association challenges a Colorado state law that imposes a $3 per day fee on short-term car rentals throughout the state. The Association alleges that this fee is preempted by federal law. Because it has failed to show that the fee at issue discriminates against airport businesses, however, Defendants' motion for summary judgment is granted, Plaintiff's cross-motion is denied, and this case is dismissed.

### BACKGROUND

On May 16, 2024, Colorado Governor Jared Polis signed S.B. 24-184, which imposes a "Congestion Impact Fee" on short-term vehicle rentals within the state. Dkt. 1 at 2. The law, which went into effect on January

- 1 -

1, 2025, directs the Colorado Transportation Investment Office to impose the Fee at a maximum rate of $3 per day "on all short-term vehicle rentals," with "short-term" being defined as "a period of not more than thirty days." Dkt. 23-1 at 21–22. The stated purpose of the law is to support "continued investment in transit and rail infrastructure" and to "foster economic development, reduce traffic congestion, improve safety, mitigate environmental impacts, improve air quality, and improve accessibility for all citizens, fostering a more interconnected and vibrant state." *Id.* at 1–2.

Plaintiff American Car Rental Association, a corporation whose "members include car rental businesses that operate in Colorado," alleges that the Fee is preempted by federal law. Specifically, Plaintiff alleges that the Fee is preempted by the Anti-Head Tax Act and the FAA Reauthorization Act (codified in relevant part at 49 U.S.C. § 40116), which prohibit "a tax, fee, or charge. . . upon any business located at a commercial service airport or operating as a permittee of such an airport that is not generally imposed on sales or services by that State, political subdivision, or authority unless wholly utilized for airport or aeronautical purposes." 49 U.S.C. § 40116(d)(2)(A)(v) (sometimes referred to as "subsection (v)"). Plaintiff argues that although the Fee is imposed on car rental services operating on and off airport premises, it is not "generally imposed on sales or services" because it "is targeted to a *particular* type of service, *i.e.*, the rental of vehicles." Dkt. 22 at 7. In other words, because it is not imposed on *all* sales or services, as a general sales tax would be, Plaintiff argues that it is proscribed by subsection (v). It claims the Fee is invalid as to any affected airport in Colorado (though it concedes that the Fee is valid throughout the rest of the state). Dkt.

- 2 -

24 at 20 ("ACRA's claim [] attacks the Fee only insofar as it applies to the airport.").

Defendants, maintain that the Fee is not preempted by federal law because it is "generally imposed" both on and off airport premises. Dkt. 23 at 7. Even though the Fee only applies to short-term car rentals—as opposed to all types of sales and services—it does not discriminate against airports, Defendants argue, and thus does not run afoul of the restrictions outlined in U.S.C. § 40116 (d)(2)(A)(v).

Plaintiff filed a complaint requesting injunctive and declaratory relief on September 5, 2024. Dkt. 1. Because this case does not involve any disputed questions of fact, the parties agreed to an expedited schedule for summary judgment briefing and filed competing summary judgment motions on December 20, 2024. Dkt. 22; 23.

The undisputed facts show that roughly half of Colorado rental car transactions occur at airport locations, and that these transactions are responsible for slightly less than half of the rental car revenue generated in the state. Dkt. 24 at 8. They also show that rental cars account for approximately three percent of the vehicle miles traveled on Colorado roadways. *Id.*

## APPLICABLE LAW

A district court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute of material fact exists. *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). A fact is material if it could affect the outcome of the suit under the governing law, and a factual dispute is genuine if a rational jury could find for the

- 3 -

nonmoving party on the evidence presented. *Id*. If a reasonable juror could not return a verdict for the nonmoving party, summary judgment is proper, and there is no need for a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In deciding whether the moving party has carried its burden, courts do not weigh the evidence, and instead must view it and draw all reasonable inferences from it in the light most favorable to the nonmoving party. *Adamson*, 514 F.3d at 1145. But a nonmovant's unsupported conclusory allegations or mere traces of evidence are not sufficient to demonstrate a genuine factual dispute. *Maxey v. Rest. Concepts II, LLC*, 654 F. Supp. 2d 1284, 1291 (D. Colo. 2009); *Scott*, 550 U.S. at 380 ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."). And "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

## DISCUSSION

In cases of statutory interpretation, a court must "begin and end [the] inquiry with the text, giving each word its 'ordinary, contemporary, common meaning.'" *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017); *accord Commonwealth of P.R. v. Franklin Cal. Tax-free Tr.*, 579 U.S. 115, 125 (2016) (when interpreting express preemption clause, courts must "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress's preemptive intent," and inquiry begins and ends with statutory language when its meaning is plain). The textual inquiry, though, is not limited to a specific section in isolation—"the text of the whole statute gives instruction as

to its meaning," and courts should "look to the provisions of the whole law" to determine the meaning of the section at issue. *Star Athletica*, 580 U.S. at 414.

In this case, the relevant text of 49 U.S.C. § 40116 is as follows:

> (d) Unreasonable Burdens and Discrimination Against Interstate Commerce.—
>
> […]
>
> (2)
>
> (A) A State, political subdivision of a State, or authority acting for a State or political subdivision may not do any of the following acts because those acts unreasonably burden and discriminate against interstate commerce:
>
> […]
>
> (iv) levy or collect a tax, fee, or charge, first taking effect after August 23, 1994, exclusively upon any business located at a commercial service airport or operating as a permittee of such an airport other than a tax, fee, or charge wholly utilized for airport or aeronautical purposes.
>
> (v) except as otherwise provided under section 47133, levy or collect a tax, fee, or charge, first taking effect after the date of enactment of this clause, upon any business located at a commercial service airport or operating as a permittee of such an airport that is not generally imposed on sales or services by that State, political subdivision, or authority unless wholly utilized for airport or aeronautical purposes.

The question presented by this case is a relatively narrow one: does "generally imposed on sales or services" mean only, as Plaintiff argues, taxes[1] on all sales or all services, or does it mean, as Defendants maintain, that states could only impose new taxes affecting airports so long as they are also generally imposed throughout the rest of the taxing

---

[1] I refer to taxes for the sake of simplicity, but the analysis applies to fees and charges as well.

jurisdiction? In simplified terms, is the "generality" requirement one of subject matter or one of geography?

Though Plaintiff's argument is not implausible, I am convinced that Defendants are correct. That is largely because their interpretation of subsection (v) is harmonious with the preceding language of subsection (d)(2)(A), which clarifies that the statute is fundamentally about preventing discrimination against interstate commerce. *See* 49 U.S.C. § 40116(d)(2)(A) ("A State, political subdivision of a State, or authority acting for a State or political subdivision may not do any of the following acts because those acts unreasonably burden and discriminate against interstate commerce.") Defendants' proposal—which would ensure that federal law preempts state taxes that disproportionately target airports—gives effect to this preambulatory language by ensuring that airport businesses (and the interstate travelers who patronize them) are on equal footing with non-airport businesses, regardless of whether the subject of the tax is itself general or specific.

Plaintiff's interpretation, on the other hand, is not consistent with subsection (d)(2)(A)'s introductory language. Its proposal would not just prevent discrimination against airport businesses; it would give them a special, exempt position by preempting as to them any tax or fee that is not generally imposed on all goods and services. If Colorado were to pass a new fee on sales of plastic water bottles, for example, (as it has done with plastic grocery bags, much to my chagrin) Plaintiff's statutory construction would require that this fee not apply to any plastic water bottles sold at airport locations. This would result in a strange state of affairs where consumers of certain goods would have an affirmative financial incentive to purchase them at airports. Far from simply preventing discrimination towards interstate commerce, this would result in discrimination *in favor* of airport businesses, at the expense of commercial

- 6 -

activity happening in the rest of the state. Neither the text nor the context nor the manifest purpose of the statute support that result.

Plaintiff responds to Defendants' point that "there is no 'discriminatory treatment' if the tax or fee applies both on-airport and off-airport" by arguing that this "is a classic example of inferring statutory purpose divorced from statutory text." Dkt. 24 at 20–21. As a general matter, I agree that it is improper for a court to infer some Congressional intent from between the lines, so to speak, of a statutory text. But here, Congress was explicit that the prohibition outlined in subsection (v) was listed because such laws "unreasonably burden and discriminate against interstate commerce." I cannot ignore this clear statement any more than I can ignore the rest of the statutory language.

The fact that Plaintiff only seeks an injunction *as to airport businesses* further reveals the disjunction between its proposed interpretation and the explicit statutory goal of preventing discrimination against such businesses. Dkt. 24 at 20 ("ACRA's claim [] attacks the Fee only insofar as it applies to the airport."). If the law enacting the proposed Fee were truly discriminatory, then enjoining it in its entirety should solve that problem. Here, however, Plaintiff concedes that the Fee is valid as to off-airport businesses, and only seeks an injunction as to businesses located on airport grounds. The result would be to give airport businesses an effective subsidy, not to treat them equally.

Plaintiff's strongest argument is that Defendants' interpretation of subsection (v) potentially runs afoul of the canon against superfluity. *See* Dkt. 22 at 18 ("When Congress amended section 40116 to add subdivision (d)(2)(A)(v) in 2018, subdivision (d)(2)(A)(iv) *already* prohibited taxes and fees that applied to on-airport transactions, but not off-airport transactions. If the State's reading were correct, then there would have been no reason to enact subdivision (v) in the first place."); *see also Beck*

- 7 -

*v. Prupis*, 529 U.S. 494, 506 (2000) ("Terms in a statute should not be construed so as to render any provision of that statute meaningless or superfluous."). While I have reservations that Congress only ever passes laws that cover new ground, *see, e.g.,* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts, at 176 (2012) ("[L]ike all other canons, [the canon against superfluity] must be applied with judgment and discretion, and with careful regard to context. It cannot always be dispositive because (as with most canons) the underlying proposition is not invariably true."); *U.S. v. Montgomery*, 578 F.Supp.3d 54, 73 (D.D.C. 2021) (the canon against superfluity "is less helpful in cases involving distinct statutory provisions enacted decades apart from one another"), the basic question that Plaintiff asks is a fair one: why would Congress have passed subsection (v) if subsection (iv) already prohibited the exact same conduct?

The answer is that the two subsections do not overlap, at least not completely. By its terms subsection (iv) prohibits taxes that "*exclusively*" apply to airport businesses, so its language permits taxes that disproportionately affect airports if they also nominally apply anywhere else. This is not a theoretical concern. *See Avis Budget Grp. v. Newark*, 48 A.3d 1113, 1116 (N.J. App. Div. 2012) (concluding that motor vehicle rental tax imposed on "designated industrial zones" "within which commercial airports are located" were not violations of subsection (iv)). Subsection (v) closes this loophole by preempting any tax that does not apply with equal force to both airport and non-airport commerce.

Yet one may still ask, what work is (iv) doing if (v) prohibits a broader scope of discrimination? Wouldn't anything covered by (iv) also be covered by (v)? And doesn't that mean that that (v) improperly subsumes (iv) in violation of the canon against superfluity?

Not quite. There is, to be sure, significant overlap between the two. But the canon against superfluity only requires what its name implies; it does not require that each provision have entirely distinct coverage— just that total superfluity be avoided. *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 81 (2011) (Scalia, J., dissenting) ("The canon against superfluity is not a canon against verbosity. When a thought could have been expressed more concisely, one does not always have to cast about for some additional meaning to the word or phrase that could have been dispensed with."); *see also Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013) ("The canon against surplusage is not an absolute rule[.]"). Even if were true that subsection (iv) is now a subset of subsection (v), I'm not sure that would violate the canon. First, that subsection (iv) pre-dated subsection (v) means that Plaintiff's position would have required repealing subsection (iv) while trying to close its loophole. There is no reason to think that the canons require that sort of legislative process. Second, subsections (iv) and (v) create different sorts of limitations on state and local governments.

Imagine, for instance, a small municipality where 99% of rental car transactions occur at an on-airport location, but the remaining 1% occurs off-airport. If the municipality imposed a fee that only applied at the airport, it would violate subsection (iv). But if same fee at issue here were passed in this hypothetical municipality, it would not be imposed "exclusively upon" the airport business, and thus would not violate the technical meaning of subsection (iv). But it would likely be a violation of subsection (v)'s prohibition against taxes that are not "generally imposed." These two provisions are therefore not coterminous, even if they often overlap and aim to accomplish the same goal.

It is also significant that the State of Colorado's Fee will be felt in roughly equal magnitude both on and off airport grounds. *See* Dkt. 24 at

- 9 -

8. And while Plaintiff is correct that rental car users only account for a small portion of miles traveled on Colorado roads, this is offset, as Defendants note, by the fact that "vehicle owners in Colorado pay a variety of fees to support Colorado's surface transportation infrastructure that renters do not." Dkt. 27 at 4–5 (citing state regulations). Unlike the hypothetical, therefore, there is nothing to support the conclusion that Colorado's Fee has a discriminatory impact against airport businesses or interstate commerce in general.

The two subsections perhaps reflect a similar distinction borne out in the doctrine of the dormant Commerce Clause.[2] Modern dormant Commerce Clause jurisprudence is "driven by concern about 'economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.'" *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337–38 (2008) (quoting *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273 (1988)). "[T]his antidiscrimination principle lies at the 'very core' of . . . dormant Commerce Clause jurisprudence." *Nat'l Pork*, 598 U.S. at 369. It thus shares an important fundamental goal with the statute at issue in this case.

One aspect of this doctrine is that a law that facially discriminates against interstate commerce is "virtually *per se* invalid," and will survive only if it "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Davis*, 553 U.S.

---

[2] The Commerce Clause of the United States Constitution provides that "Congress shall have power . . . [t]o regulate commerce with foreign nations, and among the several states, and with the Indian tribes." U.S. Const. art. I, § 8, cl. 3. This clause not only affirmatively grants power to Congress, but also has been held to include a negative implication known as the "dormant" Commerce Clause, which restricts permissible state regulation of interstate commerce. *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 368 (2023).

at 338. This is akin to the restriction in subsection (iv), which also prohibits facial discrimination against airport businesses.

The other aspect of this doctrine is that even a law that is neutral and nondiscriminatory on its face may still be invalid if its "practical effects . . . disclose the presence of a discriminatory purpose." *Nat'l Pork*, 598 U.S. at 377 (citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970)). This is akin to the prohibition in subsection (v), which closes the loophole left open by the technical language of subsection (iv).

One could, of course, argue that there is no need for a rule prohibiting facial discrimination when you already have one that prohibits laws with discriminatory effects. And there is some merit to that argument (the Supreme Court has in fact acknowledged that "'no clear line' separates the *Pike* line of cases from our core antidiscrimination precedents." *Nat'l Pork*, 598 U.S. at 377 (quoting *General Motors Corp. v. Tracy*, 519 U.S. 278, 298 n. 12 (1997))). But even if subsections (iv) and (v) largely cover the same territory, they are still complementary for the same reason that the *Pike* line of cases compliments the rest of the dormant Commerce Clause case law. That each prohibits a different form of discrimination is sufficient to show that each serves a different purpose, even if both cover a lot of the same territory.

It is also worth noting that Plaintiff's proposed interpretation raises its own textual concerns. For one, if subsection (v) prohibited all but general sales taxes, wouldn't that also include a prohibition against any tax exclusively aimed at airport commerce? And wouldn't that mean that Plaintiff's own interpretation causes subsection (v) to subsume (iv) in violation of the canon against superfluity? Further, Plaintiff appears to read the words "fee" and "charge" out of the statute. If all that is allowed under Plaintiff's interpretation of subsection (v) is a general sales or services tax, what work does that leave for "fee" or "charge" to do? In

- 11 -

other words, how would a general sales fee (if such a thing can even be conceived) be any different from a general sales tax? And why would the drafters of subsection (v) have included the extra terms "fee" and "charge" if they were simply redundant with "tax"?

Plaintiff's interpretation would result in a sweeping change in the law by prohibiting states and municipalities from imposing any new excise tax or targeted fee—hardly uncommon means of state and local revenue-generation—without exempting airports. Congress may have the power to do so in our federal system, but if it wished to curtail state and local government's traditional powers in such a dramatic way, one would think it would (and perhaps should) have been clearer that this was its intended result. *See Whitman v. Am Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes."). That subsection (v) is plausibly susceptible to multiple interpretations is further reason to adopt the interpretation that would not result in such a major change in the relationship between the federal and local governments.

Plaintiff's other arguments are unavailing. For one, Defendants' proposed reading of subsection (v) does not read words of limitation into the statutory language any more than Plaintiff's does. *See* Dkt. 25 at 4–5. To the extent Defendants' interpretation compels one to conclude that Congress meant to prohibit fees not generally imposed on goods or services *of the same type*, Plaintiff's interpretation equally requires the conclusion that Congress meant to prohibit fees not generally imposed on *all* goods or services. For there to have been no doubt about what Congress meant, one or the other of these modifying phrases would have been necessary. But that is not the issue here. The issue is that what Congress did write is potentially susceptible to two different

- 12 -

interpretations. And for the reasons stated above, I have found that Defendants' proposal is the better one.

Plaintiff's references to legislative history and to case law addressing a 2011 amendment which never went into effect, Dkt. 22 at 14–17, are also unconvincing. In this case, the statutory text is enough on its own to require the conclusion that Defendants must be correct. Subsection (v), by its own language, was always intended to prevent discrimination, and Defendants' reading is the only one that gives it this effect.[3]

## CONCLUSION

It is ORDERED that:

Plaintiff's Motion for Summary Judgment, **Dkt. 22**, is **denied**;

Defendant's Motion for Summary Judgment, **Dkt. 23**, is **granted**; and

The Clerk of Court is **directed to close this case**.

DATED: May 29, 2025        BY THE COURT:

                             Daniel D. Domenico
                             United States District Judge

---

[3] Because I have concluded that Defendants' reading of "generally imposed on sales and services" is the correct one, I do not reach their additional argument that the Fee is not imposed on "any business." I am, however, skeptical that they are correct. As Plaintiff notes, "the responsibility for filing returns and making payment of the Fee falls on rental businesses themselves." Dkt. 24 at 15; *see also, e.g., South Dakota v. Wayfair*, 585 U.S. 162, 183 (2018) (finding businesses immune from state sales tax were given "arbitrary advantage" despite the fact that such a tax is charged to consumers).